FILED
2019 Sep-03 PM 01:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **THOMAS E. REYNOLDS, as Trustee,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | 2:18-cv-00514-ACA |
| ] | |
| **BEHRMAN CAPITAL IV L.P, et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION

Plaintiff Thomas Reynolds, as chapter 7 trustee for the estates of Atherotech Inc. ("Atherotech") and Atherotech Holdings ("Holdings") filed suit against Behrman Capital IV L.P. ("Fund IV") and Behrman Brothers IV LLC ("Behrman Brothers"), seeking to recover purportedly fraudulent transfers made through a dividend recapitalization before Atherotech and Holdings declared bankruptcy. Mr. Reynolds alleges that Fund IV and Behrman Brothers engineered the dividend recapitalization, eventually bankrupting Atherotech and Holdings.

Fund IV and Behrman Brothers have filed a joint motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[1] (Doc. 116).

---

[1] Defendants also seek dismissal of the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Because the court concludes that it lacks personal jurisdiction over the defendants, the court will not address the request to dismiss the amended complaint for failure to state a claim.

Mr. Reynolds has filed a motion to change venue as an alternative to dismissal. (Doc. 130).

Because the court finds that it lacks personal jurisdiction over each defendant, the court **WILL GRANT** the motion to dismiss the amended complaint and **WILL DISMISS** the case **WITHOUT PREJUDICE**. And because the court finds that, under the doctrine of derivative jurisdiction, transfer would be futile, the court **WILL DENY** Mr. Reynolds' motion to change venue.

**I. BACKGROUND**

In deciding a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the court must accept as true the factual allegations made in the complaint unless the defendant contradicts those allegations with evidence. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999). Accordingly, the court's description of the facts draws from both the uncontradicted allegations made in the amended complaint and the evidence submitted by the parties in connection with this motion.

    1. Underlying Facts

The plaintiff, Mr. Reynolds, is the chapter 7 trustee for the estates of Atherotech and Holdings. (Doc. 115 at 1). Atherotech is the wholly-owned subsidiary of Holdings. (*Id.* at 2 ¶ 3). Atherotech operated a laboratory that conducted testing on blood cholesterol levels. (*Id.* at 9 ¶ 25). It paid physicians who ordered such testing a processing and handling fee, also known as a P&H fee. (*Id.*

¶¶ 27–28). Although Medicare rules and regulations prohibit the payment of P&H fees, Atherotech would nevertheless submit claims that included the payment of those fees to Medicare and other federal healthcare programs.[2] (*Id.* at 10 ¶¶ 29, 32). The Department of Justice eventually began to investigate Atherotech's payments of P&H fees for violation of the federal False Claims Act, 31 U.S.C. §§ 3729–3730, and the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, giving rise to $107,073,000 in contingent liabilities. (Doc. 115 at 11 ¶¶ 36–37).

In June 2013, while the DOJ was conducting its investigation, Atherotech issued a dividend recapitalization. (Doc. 115 at 13 ¶ 43). Mr. Reynolds alleges that investors in Holdings (Atherotech's parent company) engineered the dividend recapitalization, knowing that it would leave Atherotech insolvent in light of the contingent liabilities for violations of federal law relating to the P&H fee payments. (*Id.* at 21 ¶ 73).

By July 2014—over a year after the dividend recapitalization—Atherotech could no longer pay P&H fees. (Doc. 115 at 21 ¶ 70). Almost two years later, in March 2016, Atherotech and Holdings declared bankruptcy. (*Id.* at 2–3 ¶ 7). The bankruptcy court appointed Mr. Reynolds as the trustee for both estates (*id.* at 3 ¶ 8), and he filed this lawsuit against a number of defendants. (Doc. 1-1 at 9–40).

---

[2] Defendants dispute whether the practice was prohibited at the time, but that dispute does not affect this opinion.

2. This Lawsuit

After several rounds of motions practice,[3] the only remaining defendants are Fund IV and Behrman Brothers. In the amended complaint, Mr. Reynolds asserts against them claims for intentionally fraudulent transfer, under 11 U.S.C. § 544 and Ala. Code § 8-9A-4(a); constructively fraudulent transfer, under 11 U.S.C. § 544 and Ala. Code §§ 8-9A-4(c), 8-9A-5(a); and recovery of fraudulent transfer, under 11 U.S.C. § 550(a)(1). (Doc. 115 at 22–25). Mr. Reynolds alleges that Fund IV and Behrman Brothers, both investors in Holdings, engineered the dividend recapitalization with the goal of paying a dividend to themselves before the DOJ could take action against Atherotech for the payment of P&H fees. (*Id.* at 13 ¶ 43).

3. Facts Relating to Personal Jurisdiction

Fund IV is a private equity fund (*see* docs. 120-1, 120-2), which owned 94% of Holdings' stock. (Doc. 115 at 3 ¶ 12). Behrman Brothers is Fund IV's general partner, and it also owned some portion of the remaining 6% of Holdings' stock. (*Id.* at 3 ¶ 13). According to the uncontroverted evidence, Fund IV and its general partner (and co-defendant) Behrman Brothers lack both employees and operations. (Doc. 117 at 3 ¶ 8; Doc. 118 at 3 ¶ 10; doc. 120 at 3 ¶ 10). For this reason, Fund IV entered a management agreement with a non-party to this action, Behrman Brothers Management Company ("BBMC") (not to be confused with the similarly-named

---

[3] A more complete procedural history of the case is available at Docs. 77 and 107.

4

Behrman Brothers, which is a defendant in this action). (Doc. 118 at 3 ¶ 10; Doc. 120-1). Adding to this tangle, BBMC also provided "advisory services" to Atherotech and Holdings. (Doc. 118 at 3 ¶ 11; Doc. 120-2).

Fund IV appointed a number of individuals to serve on Holdings' board of directors. Among those individuals were Grant Behrman (a managing member of Behrman Brothers and the president and managing partner of BBMC) (doc. 117 at 1–2 ¶¶ 3–5), Tom Perlmutter (a partner at BBMC) (doc. 118 at 1 ¶ 3), and Mark Visser (a partner at BBMC) (doc. 120 at 1–2 ¶ 3). (*See also* Doc. 120 at 6 ¶ 19). Although Mr. Reynolds alleges that these individuals "collectively oversaw and had direct involvement in the operations of Atherotech" (*id.* at 4 ¶ 15; *see also id.* at 4–5 ¶ 16), they attest that their actions in connection with Holdings were in their capacities as either BBMC employees or Holdings board members, but never on behalf of Fund IV or Behrman Brothers (doc. 117 at 2 ¶ 6; Doc. 118 at 2 ¶ 5; Doc. 120 at 5 ¶ 15). Because Mr. Reynolds has presented no evidence to create an inference in support his allegation, and because Defendants have submitted sworn testimony contravening that allegation, the court accepts the testimony of Mr. Behrman, Mr. Perlmutter, and Mr. Visser that they were not acting on behalf of Defendants.

Mr. Reynolds also alleges that Fund IV and Behrman Brothers controlled Atherotech's sole director and its Chief Executive Officer, Michael Mullen. (Doc.

115 at 6–7 ¶¶ 17–19). Mr. Mullen became Atherotech's CEO before Fund IV and Behrman Brothers invested in Holdings. (*Compare* Doc. 115 at 3 ¶ 12; Doc. 132 at 1 ¶ 2). However, Mr. Mullen attests that he "understood that there could be adverse consequences related to my employment with Atherotech if I refused to sign the [dividend recapitalization] paperwork that Behrman provided to me." (Doc. 132 at 2 ¶ 6). His affidavit does not clarify exactly to what or to whom he refers by the use of the word "Behrman." (*See generally* Doc. 132).

## II. DISCUSSION

Fund IV and Behrman Brothers jointly move to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Doc. 116). Mr. Reynolds responds that the court has both general and specific personal jurisdiction over both defendants (doc. 125), but he asks that if the court finds jurisdiction lacking, the court transfer the case to the Southern District of New York instead of dismissing it (doc. 130). The court will address Defendants' motion to dismiss first.

### 1. Defendants' Motion to Dismiss

Under Rule 12(b)(2), the court may dismiss a complaint for "lack of personal jurisdiction." To withstand a Rule 12(b)(2) motion, the plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

Where the defendant challenges personal jurisdiction and submits affidavits in support of its position, the burden shifts back to the plaintiff to produce evidence supporting the existence of personal jurisdiction. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). To the extent the facts alleged in the complaint are uncontroverted by the defendant's evidence, the court must accept them as true, and "where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

The plaintiff satisfies his burden of showing the existence of personal jurisdiction if he "presents enough evidence to withstand a motion for directed verdict." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (quotation marks omitted). The court may grant a motion for a directed verdict "[i]f the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict." *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989). On the other hand, the court must deny a motion for a directed verdict "if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions." *Id.*

The Supreme Court has recognized two kinds of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco*

*Cty.*, 137 S. Ct. 1773, 1779–80 (2017). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* at 1780. But a court with specific jurisdiction may hear only claims that "aris[e] out of or relate[ ] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation marks omitted).

        i.      *General Personal Jurisdiction*

An entity is subject to general personal jurisdiction where it "is fairly regarded as at home." *Bristol-Myers Squibb Co.*, 135 S. Ct. at 1780. This means that the entity's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Mr. Reynolds contends that this court has general personal jurisdiction over Fund IV and Behrman Brothers because Atherotech and Holdings were their alter egos, effectively making Fund IV and Behrman Brothers "at home" wherever Atherotech and Holdings were "at home." (Doc. 125 at 26–28).

Under Alabama law, a party can establish alter ego liability by showing that (1) the dominant party had "complete control and domination of the subservient corporation's finances, policy and business practices so that at the time of the attacked transaction the subservient corporation had no separate mind, will, or

8

existence of its own"; (2) the dominant party misused that control; and (3) the misuse of control proximately caused harm or unjust loss. *First Health, Inc. v. Blanton*, 585 So. 2d 1331, 1334–35 (Ala. 1991).

Mr. Reynolds has not present evidence of alter ego liability sufficient to withstand Defendants' motion to dismiss for lack of personal jurisdiction. Although he alleges that Fund IV and Behrman Brothers exerted complete control over Holdings and Atherotech, Fund IV and Behrman Brothers have submitted evidence contravening those allegations. (*See* Docs. 117, 118, 120). Specifically, Fund IV and Behrman Brothers have submitted affidavits from Holdings' board members attesting that their actions were on behalf of Holdings or BBMC, not on behalf of Fund IV and Behrman Brothers. (Doc. 117 at 2 ¶ 6; Doc. 118 at 2 ¶ 5; Doc. 120 at 5 ¶ 15). The burden therefore shifted to Mr. Reynolds to present evidence from which "reasonable people, in the exercise of impartial judgment, might reach differing conclusions." *Carter*, 870 F.2d at 581. He has not done so, instead relying only on his unsupported allegations. The evidence does not create even an inference that Fund IV and Behrman Brothers were the alter egos of Holdings and Atherotech, and the court cannot find that general personal jurisdiction over Fund IV and Behrman Brothers exists.

## ii. Specific Personal Jurisdiction

A court with specific personal jurisdiction may hear only claims that "aris[e] out of or relate[ ] to the defendant's contacts with the forum." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation marks omitted). An entity is subject to specific personal jurisdiction where it has "minimum contacts" with the forum. Because state courts are limited by the Fourteenth Amendment to the United States Constitution, the question in those cases is whether the court's exercise of jurisdiction would violate the Fourteenth Amendment's Due Process Clause. *See Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007).

"Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). Thus, the court must examine "whether exercising jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Mr. Reynolds argues that the court has specific personal jurisdiction over Fund IV and Behrman Brothers because (1) individuals acting as agents of Fund IV and Behrman Brothers took actions in and directed at Alabama; and (2) under *Calder*

*v. Jones*, 465 U.S. 783, 788 (1984), Fund IV and Behrman Brothers' actions outside Alabama caused injuries within Alabama. (Doc. 125 at 13–24).

Both of Mr. Reynolds' arguments fail because the evidence establishes that Fund IV and Behrman Brothers could not take any actions, whether inside or outside Alabama. Mr. Grant, Mr. Perlmutter, and Mr. Visser all attested that Fund IV and Behrman Brothers lack both employees and operations. (Doc. 117 3 ¶ 8; Doc. 118 at 3 ¶ 10; Doc. 120 at 3 ¶ 10). Mr. Reynolds has not presented any evidence to the contrary; he attempts to refute the evidence with allegations, but at this stage, allegations do not suffice. *See Meier*, 288 F.3d at 1269. The evidence before the court establishes that Fund IV and Behrman Brothers could not act; therefore, they could not have minimum contacts with Alabama, either under a traditional minimum contacts test or under the *Calder* test.

With respect to Mr. Reynolds' agency argument, as discussed above, the purported agents of Fund IV and Behrman Brothers presented uncontroverted affidavits attesting that they were not acting on behalf of Fund IV or Behrman Brothers. (Doc. 117 at 2 ¶ 6; Doc. 118 at 2 ¶ 5; Doc. 120 at 5 ¶ 15). And Mr. Reynolds has not presented any evidence from which the court could infer that they were, in fact, acting as agents of Fund IV or Behrman Brothers. The court cannot exercise personal jurisdiction over Fund IV or Behrman Brothers on that basis.

For the same reason, Mr. Reynolds' reliance on the Alabama Supreme Court's decision in *Ex parte Kohlberg Kravis Roberts & Co., L.P.*, 78 So. 3d 959, 963 (Ala. 2011) is inapposite. The limited partnerships at issue in that case took direct actions relating to the acquisition of an Alabama company. *Id.* at 962–65, 973. Fund IV and Behrman Brothers, however, have presented evidence that they cannot take any actions because they do not have employees or operations.

The court concludes that Mr. Reynolds has failed to meet his burden of establishing that the court has personal jurisdiction over Fund IV and Behrman Brothers. Accordingly, the court **WILL GRANT** the motion to dismiss the amended complaint.

2. Mr. Reynolds' Motion to Transfer Venue

After briefing on Defendants' motion to dismiss was complete, Mr. Reynolds filed an "alternative motion to transfer" the case. (Doc. 130). In that motion, he requests that if the court finds that it lacks personal jurisdiction over Fund IV and Behrman Brothers, it transfer the case to the Southern District of New York because that court would have general personal jurisdiction over them. (*Id.* at 5). He relies on 28 U.S.C. § 1406, which permits the court to transfer a case "to any district or division in which it could have been brought" if the interest of justice requires such a transfer. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962) (holding

that, under § 1406, a court that lacks personal jurisdiction over the defendants may nevertheless transfer the case to a court where venue is proper).

Fund IV and Behrman Brothers oppose transfer, contending that the derivative removal jurisdiction doctrine would make transfer futile and that the interests of justice do not permit transfer in any event. (Doc. 134 at 6–13). The court agrees that transfer would be futile because the derivative removal jurisdiction bars any federal court from acquiring personal jurisdiction over this suit after its removal from a state court that lacked such personal jurisdiction.

As the court has discussed in more detail in a previous order (*see* doc. 107 at 8–11), the derivative removal jurisdiction doctrine provides that "[t]he jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter *or of the parties*, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922) (emphasis added). The doctrine applies in this case because Defendants removed the case from state court under 28 U.S.C. § 1452(a), to which the derivative removal jurisdiction still applies. (*See* Doc. 107 at 9–10). Accordingly, the only question this court (or any other federal court) can consider in determining the existence of personal jurisdiction after removal under § 14529(a) is whether the state

court in which the case was originally filed would have had personal jurisdiction over Defendants.

As the court explained above, the Alabama court in which this case was filed lacked personal jurisdiction over Defendants. Thus, under the derivative removal jurisdiction doctrine, no federal court to which the case is removed can acquire personal jurisdiction, even if that court would have had personal jurisdiction over the defendants in a lawsuit filed directly with that court. *See Lambert Run Coal Co.*, 258 U.S. at 382. Because transferring this case to the Southern District of New York would be futile, the court **WILL DENY** Mr. Reynolds' motion to transfer venue.

### III. CONCLUSION

The court **WILL GRANT** the motion to dismiss the amended complaint for lack of personal jurisdiction, and **WILL DISMISS** the amended complaint **WITHOUT PREJUDICE**. The court **WILL DENY** Mr. Reynolds' motion to transfer venue.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this September 3, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE